## EBENEZER JOHNSON *vs.* CHARLES P. SUMNER.

Under the Rev. Sts. *c.* 90, § 79, which provide that when mortgaged goods are attach-
ed, " the mortgagee shall, when demanding payment of the money due to him, state,
in writing, a just and true account of the debt or demand for which the property is
liable to him, and deliver it to the attaching creditor or officer," the mortgagee may
include interest, as well as principal, in such account. And he does not render his
account untrue, *by understating the amount of interest, if his securities are not in his*
own hands, or he has not the means of computing the interest exactly.

Where a balance, remaining due on a note, is the debt for which mortgaged goods are
liable, the mortgagee may well state, in such account, the single sum to which the
debt is reduced. But where a mortgage is on condition to secure several demands de-
scribed in general terms, a statement of the result, composed of the aggregate of
several distinct demands, is not a just and true account.

Where goods are mortgaged to secure performance of any other obligation than the
payment of money, it seems that the only mode of attaching the goods is by summon-
ing the mortgagee as trustee of the mortgagor, according to the provisions of the
Rev. Sts. *c.* 109, §§ 25, 26.

A mortgagee of goods, immediately after they were attached, made a demand and
stated an account which were informal and ineffectual, and brought an action against
the attaching officer, which he prosecuted for thirteen months, and then became non-
suit. Fourteen days before he thus became nonsuit, he delivered to the attaching
creditor and officer a just and true account, according to law, of the debt for which
the goods were liable, and demanded payment. *Held*, that this last demand was,
under the circumstances, within a reasonable time.

In an action of trover, the rule of damages is the value of the goods at the time of
conversion, and interest thereon from that time.

TRESPASS upon the case against the sheriff of Suffolk for an
alleged wrongful taking and conversion, by one of his deputies,
of seventy-one thousand feet of pine boards. The writ was
dated June 5th, 1838.

At the trial before *Wilde*, J., the plaintiff proved a mortgage
of said boards made to him, November 18th, 1836, by Nathan
Frost, and duly recorded, to secure payment of a promissory
note for $ 4,000, payable in six months   He also proved that

said boards were attached by a deputy of the defendant, on the 4th of January, 1837, as the property of Merritt & Bush, on a writ sued out against them by Harris & Jones ; that the plaintiff commenced an action against the defendant, on the 7th of said January, for taking said boards, and prosecuted the same until the 10th of May, 1838, when he became nonsuit, in consequence of the ruling of the judge, who sat in the hearing, that the notice given by the plaintiff to the defendant of his claim under the mortgage, was not such as entitled him to maintain said action ; that on the 26th of April, 1838, the plaintiff made a demand in writing upon the defendant, and his deputy who attached the boards, and upon Harris & Jones, for a delivery thereof, and set forth the debt or demand for which said property was liable to him, as follows : " I claim to own, hold, and possess said boards, as mortgagee thereof, by virtue of a mortgage from Nathan Frost, to me, dated November 18th, 1836, given by said Frost to secure to me certain sums of money due to me from him, and to save me harmless and indemnified against certain liabilities by me before that time assumed for him. The amount of money due to me from said Frost, at the time of the taking of the boards [by the deputy sheriff,] was $ 858, and the whole of said sum still remains due to me from said Frost, and I was at the same time liable as surety, guarantor, or joint promisor, to pay, for and on account of said Frost, three promissory notes, amounting in all to $ 1,525, which notes are still outstanding and unpaid ; and I am still liable to pay the whole of that sum, by reason of my liability on said notes. At the time of the making of said mortgage, and of said taking [by the deputy sheriff,] I was liable for sundry other large sums on account of said Frost, from some of which I have since been relieved. I therefore demand of each of you the aforesaid sum of $ 858, with interest from the taking of said boards, and I further demand to be secured and held indemnified against all my liability on said three notes, amounting in all to the said sum of $ 1,525."

The plaintiff proved the facts alleged in the above statement. But it appeared that the sums which Frost owed him, and for which he was liable as surety or indorser for Frost, amounted, at

15 *

the time of the attachment, to $1,490 only, exclusive of interest, and that by adding the interest, the sum was a little more than $1,525.

It was admitted by the plaintiff, that he was never in possession of the boards, and that Frost sold them, through the agency of a broker, to Merritt & Bush, who had no actual notice of the mortgage, and to whom the name of Frost was not made known ; and that they gave to the broker their promissory note for the price.

The boards were afterwards, by consent of Merritt & Bush and their other attaching creditors, sold at auction by the deputy who attached them. Previously to the sale, the plaintiff gave written notice to said deputy that the boards belonged to him, and forbade the sale.

The defendant objected to the plaintiff's right to recover, be cause the notice given on the 26th of April, 1838, was insufficient and void, as it was not given in a reasonable time after the attachment ; and the amount demanded and specified therein was larger than that which was actually due to the plaintiff, and for which he was liable on Frost's account at the time of the attachment. This objection was overruled by the judge.

The defendant denied that the plaintiff was entitled to recover interest on the value of the boards, except from the date of the second notice. But the judge ruled that he was entitled to interest from the date of the attachment, and the jury returned a verdict for the plaintiff for the sum of $852·33, and interest, according to the judge's instructions, amounting to $102·30, which is to be set aside, and the plaintiff become nonsuit, or be reduced so as to include the proper amount of interest, as the court shall order.

Several exceptions, which were taken at the trial, were waived by the defendant's counsel, at the opening of the argument.

*I. J. Austin*, for the defendant. The Rev. Sts. *c.* 90, § 79, require that a mortgagee of chattels which are attached " shall, when demanding payment of the money due to him, state in writing a just and true account of the debt or demand for which the property is liable to him." In this case, no account was

stated. Notice was given of the amount of a mere balance of accounts. The attaching creditors had a right to see the items. It is no answer to this objection, that the statute gives redress against a mortgagee who demands and receives more than is due to him. It was the design of the statute to enable the attaching creditor to avoid the risk of paying more than is due. *Allen* v. *Clark*, 17 Pick. 54.

The notice was uncertain as to the amount of the plaintiff's liabilities for Frost. The attaching creditors could not have tendered indemnity against this uncertain part of the statement.

But if the notice contained an account, and an intelligible one, yet it was not " a just and true account." The case shows only $ 1,490, yet the plaintiff demanded payment and security to the amount of $ 1,525.

The statute on which this case rests should receive a strict construction, like the *St.* of 1786, *c.* 21, as to the statement of a demand annexed to a rule of reference. *Jones* v. *Hacker*, 5 Mass. 264. *Mansfield* v. *Doughty*, 3 Mass. 398. *Bullard* v. *Coolidge*, 3 Mass. 324.

The statute prescribes no time within which the mortgagee must make demand and give notice. He must therefore do it within a reasonable time. Fifteen months had elapsed in this case, and it was the plaintiff's fault that his first notice was insufficient.

As the attachment was rightful, the defendant is liable, if at all, only for detaining the boards after legal notice of the plaintiff's claim. Interest should therefore be taken only from the time of the last notice.

*H. H. Fuller*, for the plaintiff. The object of the statute is, not to give an attaching creditor time to investigate the accounts between the mortgagee and mortgagor, but to give him informa tion as to the amount which he must pay, and a remedy against the mortgagee, if he demands and receives more than is his due.

The rendering of an account is a matter *in pais*, and need not be according to judicial forms. The account was as particular as the nature of the relation of the parties would permit. The interest on the sums due, &c. makes up more than $ 1,525 ;

and even if there had been a mistake of a few dollars, the court would not deprive the plaintiff of his rights.

As the defendant has neither paid nor tendered any sum, the statute does not intend that the mortgagee's claim shall be discharged in consequence of his not giving due notice.

The verdict should include interest on the value of the boards from the time of the attachment. The defendant, after demand and notice, became a trespasser *ab initio*. *Oxley* v. *Watts*, 1 T R. 12. Yelv. 29 *d, note. Dye* v. *Leatherdale*, 3 Wils. 20.

*J. T. Austin,* (Attorney General,) replied.

SHAW, C. J. This was an action against the late sheriff, for a quantity of lumber attached by one of his deputies, and claimed by the plaintiff as mortgagee. We had supposed, during the argument, that in form it was trespass *de bonis asportatis ;* but on reference to the declaration, and also to the report, it appears to be trover, with a special count in case, on the facts. No question is made respecting the form of action, and nothing is open, except the points reserved on the trial.

Before proceeding to consider the exceptions taken by the defendant's counsel, it may be proper, in order to prevent misconception, to make a remark upon the terms of the plaintiff's notice. He claims to hold the boards by virtue of a mortgage bearing date November 18th, 1836, " given by said Frost to secure to me certain sums of money due to me from him, and to save me harmless, &c." We at first supposed, that this was the form of the condition of the mortgage, viz. to pay certain sums of money, and to indemnify against actions, liabilities as surety, &c. Had such been the condition of the mortgage, it is very doubtful whether the goods could be specifically attached, by virtue of the Rev. Sts. c. 90, §§ 78, 79. All the provisions of this statute seem framed on the assumption, that the property stands pledged or mortgaged for the payment of money, and nothing more. The officer or attaching creditor, therefore, can discharge the lien by the payment of the money due ; but the condition being to indemnify, or perform some other collateral act, there seems no mode indicated by which the condition can be performed.

This is strengthened by another provision in Rev. Sts. *c.* 109, regulating the trustee process. It is provided, § 25, that if the goods, in the hands of the person summoned, are mortgaged or pledged for the payment of any debt, the attaching creditor may pay or tender the amount due, and thereupon the trustee shall deliver the goods. And by § 26, if the goods, in such case, are held for any purpose other than to secure the payment of money, and the condition or thing to be performed is such as can be performed by the attaching creditor, the court may make an order for the performance of it by him, and thereupon the trustee shall deliver the goods, &c.

Taking both modes of attaching, and the statute provisions applicable to each, we are strongly inclined to the opinion, that when goods are mortgaged to secure the performance of any other obligation than the payment of money, the only mode of attaching the property is by summoning the mortgagee as trustee. We make this suggestion, lest it might be inferred from the notice, that the condition of the mortgage, in this case, was to indemnify the mortgagee as well as to pay money, and yet that the goods were specifically attached.

But upon a reference to the mortgage, it appears that the only condition was, to pay a large sum of money, and so it seems to have been understood at the bar ; and the question was, what sum of money, or rather what part of such large note was due at the time of the attachment. Whether the mortgage could be available for any thing but money due to the plaintiff, it is not now necessary to inquire ; because the amount of money due to the mortgagee, independent of liabilities, exceeded the value of the mortgaged property, as found by the jury.

Coming then to the questions reserved at the trial, several of them are waived, and the only one relied upon is the suffic'ency and seasonableness of the notice, given by the plaintiff to the attaching officer and creditor, of the amount due on the mortgage. The exception taken at the trial was, that the precise sum due was not stated ; that is, a sum neither more nor less than the sum due ; but that the amount demanded was larger than the amount due.

As it applies to the sum due to the plaintiff in cash, the sum was proved as stated. Had the mortgage been made on condi-tion to secure several demands described in general terms, we think a statement of the result, composed of the aggregate of several distinct demands, would not have been a just and true account, within the meaning of the statute. But this was the part remaining due on a larger note, for which the mortgage was made ; and we think it was sufficient to state the single sum to which the debt was reduced by payments or otherwise.

As to the amount for which the plaintiff was liable as surety, guarantor, or indorser, the opinion of the court is, that it was not for a larger sum than the amount due, and so not open to the exception taken to it. The account is to be of the debt or demand, for which the property is liable to the mortgagee ; and such an account may well include interest as well as principal. And such including of interest would not render the account untrue ; and as the mortgagee renders himself liable for a penalty, if he states his account for more than is due to him and receives it, we think he may understate the amount of interest, when the securities are not in his own hands, and when he has not the means of computing the interest exactly, without rendering his account subject to the imputation of being untrue. In the present case, the amount stated in the demand and account was less than the amount actually due, computing the interest on the notes.

As to the exception, that the demand was not made within reasonable time, we have felt much more difficulty. Somewhat more than a year elapsed, from the attachment to the time of the last and effectual demand. If there were nothing to account for and explain this delay, we should think it was not made within reasonable time. But there are several circumstances tending to excuse it. There was an early, though an informal demand, but sufficient to inform the officer and attaching creditor of the existence of the plaintiff's mortgage and put them on inquiry ; and it was stated at the bar, and known to some of the court, that a former action was brought. The action, in which the attachment was made, was still pending, when the last demand of the plain-

tiff was made. On the whole, under the circumstances of the case, the court are of opinion, that the demand of the plaintiff was made within reasonable time.

The point of interest we think is easily disposed of. It was argued that the defendant was chargeable as a trespasser *ab initio*, and so should be liable for interest from the first taking. And from the terms of the report, we are inclined to think that the case was presented to the court as a trespass, because the defendant contended that if the plaintiff was entitled to recover, he could lawfully claim interest only from the last demand, and not from the day of the supposed tortious taking ; but the court ruled otherwise. But we think the form of the action is decisive. It is trover, and charges no tortious taking. The conversion relied on, is that following the last and effectual demand in April, 1838. And then the well settled rule of damages in trover applies ; the value of the goods at the time of the conversion, and interest from that time. *Kennedy* v. *Whitwell*, 4 Pick. 466. The verdict is to be amended by computing the interest from that demand ; after which, judgment is to be rendered on the verdict for the plaintiff.